# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. <u>3:19-cv-694-FDW</u>

| | |
|---|---|
| **JILL ROE,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**CHARLOTTE-MECKLENBURG BOARD** )<br>**OF EDUCATION; MARK BOSCO**, in his )<br>individual capacity and as an employee of )<br>Charlotte-Mecklenburg Schools; **BRADLEY** )<br>**LEAK**, both individually and as an agent of )<br>Charlotte-Mecklenburg Schools, and in his )<br>official capacity as a law enforcement officer )<br>of the Charlotte- Mecklenburg Police Department; )<br>**THE CITY OF CHARLOTTE**, a North Carolina )<br>Municipality; and **KERR PUTNEY**, in his official )<br>capacity as Chief of the Charlotte-Mecklenburg )<br>Police Department, )<br>)<br>Defendants. )<br>)| **COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Jill Roe ("Ms. Roe"), by and through counsel, hereby files this Complaint against

Defendants Charlotte-Mecklenburg Board of Education ("CMS"), Mark Bosco, Bradley Leak, the

City of Charlotte ("City"), and Kerr Putney (collectively "Defendants"), for claims arising out of

a peer-perpetrated rape in the woods adjacent to Myers Park High School ("MPHS").

## INTRODUCTION

1.      On or about October 22, 2014, as part of an ongoing pattern of dating violence and

sexual harassment, MPHS student M.G.[1] claimed that he had brought a gun to school and would

use it if his classmate and ex-girlfriend, a then-15-year-old Ms. Roe, did not meet him after classes.

---

[1] Pursuant to Fed. R. Civ. P. 5.2(a)(3), this Complaint refers to the male student by his initials.

Fearing for the safety of M.G., herself and others at MPHS, Ms. Roe complied. M.G. took Ms. Roe into the woods adjacent to campus where he attempted to anally rape her before vaginally penetrating and raping her. Immediately following this attack, Ms. Roe reported the rape to fellow students, C.H. and J.M. Both students encouraged her to report the attack to CMS officials.

2.      The next day, with support from J.M., Ms. Roe reported the dating violence, sexual harassment and recent rape to Stacey Weinstein, the MPHS site coordinator for Communities in Schools ("CIS"). Ms. Roe reported that the rape happened in the woods adjacent to MPHS. Upon information and belief, Ms. Weinstein provided actual notice of the attack to CMS. Despite this notice, CMS responded with deliberate indifference to leave a 15-year-old Ms. Roe vulnerable to ongoing sexual harassment and abuse by M.G.

3.      After the rape, M.G. continued to sexually harass and threaten Ms. Roe. Ms. Roe felt hopeless to stop the abuse given the lack of any consequence after she first reported to a CMS official. When Ms. Roe disclosed her ongoing abuse to a fellow classmate, J.F., he encouraged her to report the sexual abuse to CMS for a second time. In December 2014, J.F. went with Ms. Roe to support her reporting the dating violence, sexual harassment and rape to MPHS Counselor, Kimberly Folk. Counselor Folk failed to provide Ms. Roe information about her rights and options under Title IX nor did she report the sexual abuse to Ms. Roe's parents or any other appropriate authority, despite Ms. Roe being a minor student. Instead, Counselor Folk directed Ms. Roe to report the abuse to CMS for a third time – this time to the School Safety Resource Officer ("SSRO"), Defendant Bradley Leak.

4.      The next day, Ms. Roe went to Defendant Leak's office at MPHS to report the dating violence, sexual harassment and rape committed against her by M.G. After receiving the series of threatening and harassing text messages sent by M.G. to Ms. Roe, including one where

M.G. alleged he had a gun in his backpack and would use it while at MHPS, Defendant Leak interrogated the 15-year-old Ms. Roe about the rape without an adult present and without any notice to her parents. Defendant Leak then required Ms. Roe to return after school and report for a fourth time – this time to MPHS Principal, Defendant Bosco.

5.     After school, Ms. Roe reported the dating violence, sexual harassment and rape to Defendant Bosco with Defendant Leak present. Despite the text message evidence from M.G., Defendant Leak discounted the threats as insufficient evidence of the "reasonable duress" required for a criminal charge of rape because M.G. had made repeated threats in the past to successfully control Ms. Roe as part of the pattern of dating violence. Defendant Leak then left the meeting.

6.     Defendant Bosco then informed Ms. Roe that she could make a fifth "formal" report, but then discouraged the 15-year-old Ms. Roe from doing so by claiming that if M.G. was "found innocent" it would mean that she would be found responsible for having sex on campus to subject her to disciplinary action and negatively impact her good standing at MPHS. Principal Bosco then directly implied to Ms. Roe that she should just let the whole thing blow over in order to avoid this risk to her academic future. Upon information and belief, Defendant Bosco failed to report the rape to Charlotte-Mecklenburg Police Department ("CMPD"), CMS or Ms. Roe's parents despite her being a minor student.

7.     Through its failure to take any meaningful action or otherwise report the rape of a minor student to the proper authorities or her parents, CMS demonstrated its deliberate indifference towards M.G.'s dating violence, sexual harassment and rape of Ms. Roe to perpetuate a hostile educational environment at MPHS. CMS's deliberate indifference and threats of retaliation against Ms. Roe thoroughly discouraged her from pursuing any of her rights and options through the criminal system, the school disciplinary process or under Title IX.

8.     Upon information and belief, CMS, by and through its agents and employees, received several reports of male students committing sexual misconduct against minor female students in the woods adjacent to MPHS's main campus and routinely responded with deliberate indifference.  Upon information and belief, CMS had received so many reports of sexual misconduct occurring in the woods adjacent to campus that Defendant Bosco convened a student assembly to discuss the issue during the early part of the fall semester of 2015.

9.     During this student assembly, Defendant Bosco reportedly told students "some people go into the woods and don't come back happy."  He warned female students that MPHS and its officials "could not protect them" if they went into the woods with a male student, and told male students that "in these cases, you're guilty until proven innocent because that's just the price we pay for being men."  Through these remarks, CMS minimized the seriousness of the sexual harassment and abuse occurring in the woods adjacent to campus and instead evidenced a pattern of deliberate indifference towards such reports at MPHS.  It also caused Ms. Roe significant emotional distress as she knew the remarks were in part about her.

10.    Defendant Bosco's remarks during the student assembly perpetuated the ongoing hostile educational environment at MPHS, as students started to joke about sexual abuse occurring in the woods adjacent to campus.  Furthermore, two other minor students, S.R. and G.C., alleged that M.G. had sexually abused them while attending MPHS.  A third minor student, Jane Doe, also experienced sexual abuse in the woods at the hands of another male student, Q.W.[2]  By failing to take meaningful action reasonably calculated to address the hostile sexual environment at MPHS, CMS left female students vulnerable to the known risk of sexual abuse in the woods.

---

[2] *See Jane Doe v. Charlotte-Mecklenburg Bd. of Educ.,* et al., Civil Action No. 3:18-CV-00586 (W.D.N.C.).

## JURISDICTION & VENUE

11.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action because Plaintiff's claims assert federal questions regarding her rights under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681, *et seq.*, and 42 U.S.C. § 1983.

12.     Pursuant to 28 U.S.C. § 1343(a)(3) & (4), this Court also has subject matter jurisdiction over this action because this case seeks damages for Plaintiff's claims regarding the deprivation of her federal rights under 42 U.S.C. § 1983.

13.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims because the state law claims are so related to the federal law claims in this action to form part of the same case and controversy under Article III of the U.S. Constitution.

14.     Pursuant to Fed. R. Civ. P. 4(k)(1), this Court has personal jurisdiction over Defendants as they are located and/or regularly conduct business in this jurisdiction and because the conduct giving rise to the claims in this case occurred within this judicial district.

15.     Pursuant to 28 U.S.C. § 1391, venue in this District is proper because Defendants reside within this District and a substantial part of the events and omissions which form the basis of this Complaint occurred within this District.

## PARTIES

16.     Plaintiff, Jill Roe,[3] is a resident of Mecklenburg County, North Carolina, and a citizen of North Carolina.

17.      Defendant CMS is a corporate body located in Charlotte, North Carolina.  The State of North Carolina has granted CMS powers to "general[ly] control and supervis[e] . . . all

_____

[3] Plaintiff has filed simultaneously with this Complaint a Motion Seeking Leave to Proceed under Pseudonym and Motion Seeking a Protective Order Sealing Portions of the Court Record to protect her true identity as the victim of a rape and as a minor student.

matters pertaining to the public schools in their respective administrative units and . . . [to] enforce the school law in their respective units." N.C. Gen. Stat. §§ 115C-36, 115C-40. At all times relevant to this Complaint, CMS acted under color of state law.

18.     Defendant Mark Bosco is a resident of Mecklenburg County, North Carolina, and a citizen of North Carolina. At all times relevant to this Complaint, Defendant Bosco served as Principal of MPHS, was an employee of CMS, and was acting under the color of state law.

19.     Defendant Bradley Leak is a resident of Mecklenburg County, North Carolina, and a citizen of North Carolina. Pursuant to N.C. Gen. Stat. §115C- 47(61), CMS entered into an agreement with CMPD Chief of Police, Defendant Putney, to obtain an SSRO. Pursuant to N.C. Gen. Stat. § 160A-288.4, Defendant Putney selected and assigned Defendant Leak to serve as a SSRO at MPHS. At all times relevant to this Complaint, Defendant Leak acted under color of state law, both as an agent of CMS and as an employee of CMPD and thus the City.

20.     Defendant City is a municipal corporation located in Mecklenburg County, North Carolina. Pursuant to the provisions of N.C. Gen. Stat. § 160A-11, the City is duly chartered and vested with corporate powers and rights, including, but not limited to, the capacity to sue and be sued. Pursuant to the provisions of N.C. Gen. Stat. § 160A-281, the City appointed police officers and a police chief to CMPD, which is maintained and operated as a component department of the City and as one of its municipal functions at all times relevant to this action. Pursuant to the authority granted under N.C. Gen. Stat. § 160A-485.5, the City has expressly waived its governmental immunity to the extent provided by the North Carolina State Tort Claims Act. In addition, or in the alternative, the City has waived immunity by purchasing liability insurance or by participating in a governmental risk pool which indemnify it for liabilities incurred as a result of the claims in this case.

6

21.     Defendant Putney is the Chief of Police for the CMPD and, upon information and belief, a resident of Mecklenburg County, North Carolina, and a citizen of North Carolina. Pursuant to N.C. Gen. Stat. § 160A-288.4, Defendant Putney, in his official capacity as Chief of Police, has final policymaking authority regarding the development of, and training for, the SSRO program within CMS.

## FACTS

### *Pattern of Dating Violence and Sexual Harassment*

22.     Around March 2014, during the 2013–2014 school year, when they were both enrolled as freshmen students at MPHS, Ms. Roe entered into a dating relationship with M.G. Over the next few months, M.G. became controlling and abusive as part of a pattern of dating violence.  As a result, Ms. Roe ended their relationship around late July 2014.

23.     Around August 2014, M.G. told Ms. Roe that he had attempted suicide because she had ended their relationship and that he had been hospitalized as result.  He then started sending text messages to Ms. Roe a few times a week threatening to commit suicide or self-harm again if she would not continue to be his girlfriend.

24.     At one point, M.G. threatened to send images of him slitting open his wrists with a razor blade to Ms. Roe in an effort to control and manipulate her.  As part of these threats, M.G. demanded that Ms. Roe send him explicit images of herself stating it was the only way to confirm their relationship so that he would not hurt himself.

25.     Around September 2014, during the 2014–2015 school year, when they were both enrolled sophomore students at MPHS, M.G. escalated his abusive behaviors towards Ms. Roe by sending threatening text messages on a daily basis.  When Ms. Roe refused to engage with M.G., or send him explicit images, M.G. would threaten to send explicit images of her to their friends

and fellow classmates at MPHS. Upon information and belief, on at least one occasion, M.G. disseminated explicit images of Ms. Roe to classmates in order to humiliate and control her.

***Escalation of Sexual Harassment to Sexual Violence***

26.     During the fall 2014 semester, M.G. started demanding that Ms. Roe meet with him in person and she continually found excuses and reasons to avoid him. Eventually, M.G. demanded Ms. Roe meet him at Freedom Park in Charlotte, North Carolina. When she met him there the second week of October 2014, M.G. pressured Ms. Roe for sexual contact and activity. She refused to do anything other than kiss him, but M.G. physically forced Ms. Roe to perform oral sex on him.[4] After this abuse, Ms. Roe struggled with feelings of shame that left her unable to report the sexual abuse to anyone, including her parents.

27.     As part of his pattern of dating violence, M.G. sent text messages apologizing to Ms. Roe and promising never to force oral sex on her again. Despite this, M.G. continued to sexually harass and threaten Ms. Roe through text messages.

28.     Eventually, Ms. Roe disclosed the sexual harassment and abuse to a friend and fellow classmate, C.H., who encourage Ms. Roe to report the sexual abuse to both CMS and CMPD. Ms. Roe refused fearing that M.G. would further threaten or abuse her in retaliation.

29.     On or about October 21, 2014, M.G. sent a message that Ms. Roe should meet him after school outside MPHS. Ms. Roe was afraid of another sexual assault, so she refused to meet up with M.G. Ms. Roe then conveyed her fears to C.H. When M.G. stalked her after class, and

---

[4] Upon information and belief, in the woods adjacent to MPHS, around December 2013, M.G. forced another classmate, S.R., to perform oral sex on him without consent. S.R. did not report the abuse as she feared CMS officials would blame her for agreeing to meet M.G. in the woods and cited the lack of resources and support for other victims who did choose to report at MPHS.

tried to force Ms. Roe into the woods adjacent to campus, C.H. intervened to protect Ms. Roe by claiming she needed to work with him on a project to successfully pull her away from M.G.

30.     M.G. became furious and threatened by text message to rape Ms. Roe.  Specifically, he sent numerous text messages saying that the next time he saw her they were going to have sex whether she wanted to do so or not.  As part of the ongoing pattern of dating violence, M.G. later apologized to Ms. Roe for his threats and said he had just lost his temper, but then went on to blame her for upsetting him in an effort to further emotionally manipulate her.

31.     On or about October 22, 2014, M.G. sent a text message to Ms. Roe while attending classes at MPHS stating that ***he had a gun in his backpack and would shoot himself in the head if she did not agree to meet him after school***.  As part of this threat, he warned Ms. Roe against telling anyone or otherwise seeking help by threatening that it would make things worse.

32.     Fearing for the safety of M.G., herself and others at MPHS, Ms. Roe agreed to meet M.G. after class.  Given the previous threats that M.G. would rape her, Ms. Roe tried to negotiate with him not to force any sexual activity on her when she met him after classes.

33.     After classes, Ms. Roe met M.G. in the quad.  M.G. then walked her into the woods adjacent to campus near the Physics building parking lot.  Upon finding a clearing near the path, M.G. took off all his clothing and then removed Ms. Roe's clothing.  He threatened to anally rape her if she would not perform oral or vaginal sex with him.  M.G. then forced Ms. Roe to bend over, lubricated her anus with his mouth and tried to force his penis inside her anus without success. M.G. then demanded Ms. Roe "lubricate" him and forced her to perform oral sex on him.  He then bent Ms. Roe over again and penetrated her vagina with his penis to rape her while she cried out for him to stop and struggled to break free.

34.     M.G. tried to force Ms. Roe to stay, but she claimed that she had theatre rehearsal and that someone from MPHS would come looking for her if he did not let her go.  While rushing to put on her clothing and leave, Ms. Roe observed M.G.'s visible anger, which caused her fear.  After she left, M.G. sent text messages to Ms. Roe saying that it was "unfair" that he had not ejaculated to imply that further sexual abuse awaited her.

35.     As Ms. Roe rushed back to MPHS's campus, she sent text messages to C.H. reporting that she had been raped by M.G.  C.H. encouraged her to report M.G. to the proper authorities.  Ms. Roe still felt unable to report to authorities given how violent and angry M.G. had been and her ongoing fear he would retaliate against her for any such report.

36.     The following day, on or about October 23, 2014, fellow student J.M. observed that Ms. Roe was visibly upset during their shared Spanish class and asked what was wrong.  Ms. Roe refused to say anything, but J.M. insisted that she tell him what was wrong.  Upon hearing about the sexual harassment and violence, J.M. insisted Ms. Roe report to CMS officials immediately.  Ms. Roe refused because she was terrified of the potential consequences of further upsetting M.G., which included the threat that he would find her after school that day.  J.M. offered to meet Ms. Roe after school in order to protect her from M.G. and Ms. Roe accepted.

### First Notice of Sexual Harassment and Violence to CMS

37.     When Ms. Roe went to meet J.M. in the MPHS library after school, she found J.M. waiting with Ms. Weinstein, the CIS site coordinator for MPHS.  J.M. encouraged Ms. Roe to report the sexual abuse to Ms. Weinstein.  Ms. Roe then entered the CIS office within the MPHS library and reported that M.G. had been sexually harassing and abusing her and had recently raped her in the woods adjacent to MPHS.  Ms. Weinstein assured Ms. Roe that MPHS would take action on her report without providing any further information about her rights or options.

38.     Upon information and belief, Ms. Weinstein reported the sexual misconduct to CMS and an official contacted M.G.'s mother.

39.     While M.G. did not contact Ms. Roe for a few weeks after this report, he started to send her harassing and threatening text messages again in November 2014. In those messages, M.G. accused Ms. Roe of reporting him to MPHS and getting him into trouble. M.G. then demanded Ms. Roe send more explicit photographs and videos under further threats of violence. Ms. Roe felt ashamed and unable to report this ongoing harassment given her fear that it would make things worse as M.G. had not been deterred after her first report.

### *Second Notice of Sexual Harassment and Violence to CMS*

40.     Eventually, Ms. Roe confided about the ongoing sexual harassment to a senior at MPHS, J.F. J.F. encouraged Ms. Roe to report the sexual harassment and abuse to CMS, so he arranged for her to speak with Counselor Folk. J.F. also worked with Ms. Roe to collect all the threatening text messages M.G. had sent her to turn over as evidence to CMS.

41.     The next day, in early December 2014, Ms. Roe went with J.F. and another mutual friend, W.P., to Counselor Folk's office. Ms. Roe reported M.G.'s ongoing dating violence, sexual harassment, sexual assault and rape to Counselor Folk. In response, Counselor Folk failed to inform Ms. Roe about any of her rights or options. Instead, Counselor Folk directed Ms. Roe to report again to Defendant Leak as SSRO for MPHS. Upon information and belief, despite Ms. Roe being a minor student, Counselor Folk did not report the rape to CMS, CMPD, Ms. Roe's parents, or any other appropriate authority.

42.     The next day, during school hours, Ms. Roe went to Defendant Leak's office at MPHS to report M.G.'s dating violence, sexual harassment and rape. Instead of calling her mother, Defendant Leak interrogated the 15-year-old Ms. Roe about the rape in the woods. Ms. Roe then

provided M.G.'s text messages as proof of the threats and sexual abuse to Defendant Leak who took the messages. Defendant Leak then scheduled for Ms. Roe to return at the end of the day to meet with himself and Defendant Bosco.

43.    After school, Ms. Roe met in Defendant Bosco's office and again reported the dating violence, sexual harassment, sexual assault, and rape to Defendants Leak and Bosco. During this meeting, Defendant Leak claimed that M.G.'s threat to use the gun in his backpack did not constitute the "reasonable duress" required for a criminal charge of rape, as he had repeatedly threatened suicide to gain compliance from Ms. Roe. Defendant Leak then left the meeting. Upon information and belief, despite Ms. Roe being a minor student, Defendant Leak did not report the sexual abuse to Ms. Roe's parents, nor did he act upon M.G.'s text messages stating he had brought a gun to MPHS.

44.    Defendant Bosco then informed Ms. Roe that he had reviewed the text messages between herself and M.G., as provided by Defendant Leak. Defendant Bosco offered to meet and discuss with M.G. the "proper way to treat a lady," but did not offer protective measures or corrective actions to prevent the ongoing dating violence and sexual harassment.

45.    Defendant Bosco then informed Ms. Roe that she could make a "formal" report against M.G., but then discouraged her from doing so. Specifically, Defendant Bosco stated that if M.G. were "found innocent" then Ms. Roe would be suspended for having sex on campus to jeopardize her good standing as a student at MPHS. Defendant Bosco directly implied to Ms. Roe that she should just let the whole thing blow over. As Ms. Roe was a straight-A student seeking to attend a top college, she declined to make a "formal" report because she did not want to risk her academic standing as a student.

46.     After successfully discouraging the 15-year-old Ms. Roe from making any formal action against M.G., Defendant Bosco stated he would contact Ms. Roe's mother.

47.     Ms. Roe's mother arrived at MPHS to meet with her daughter and Defendant Bosco.  Ms. Roe's mother recalled learning that M.G. had been sexually harassing her daughter and pressuring her to make a quick decision about whether to take action against M.G.  Defendant Bosco discouraged this by stating that M.G. was "young" and it was his "first offense" and that MPHS would make sure he left Ms. Roe alone moving forward.

48.     Given Defendant Leak's claim that no crime had occurred, and Defendant Bosco's threat that CMS could retaliate against Ms. Roe to affect her academic future, Ms. Roe declined to make a "formal" report when asked by her mother in front of Defendant Bosco.  At no point did Ms. Roe's mother know that Defendants Leak and Bosco had discouraged her daughter from taking action before she had arrived at MPHS.

49.     At no point did Defendant Bosco provide information to either Ms. Roe or her mother about their rights and options under Title IX.

***Ongoing Hostile Educational Environment at MPHS***

50.     For the rest of the fall 2014 semester, Ms. Roe struggled academically and had to work overtime to maintain her high grades.  She often missed school, suffered mental breakdowns and would leave class to head to the bathroom where she would cry, experience panic attacks, suffer flashbacks, and otherwise be emotionally distressed while being required to attend school with M.G.  Some emotional breakdowns occurred during theatre practice in front of other classmates.

51.     For the remainder of her time as a student at MPHS, Ms. Roe became socially isolated as she stopped attending any events where M.G. would likely be present and avoided any students who associated with M.G.

52.     Despite trying to avoid M.G. by changing her routes to and from classes, and avoiding certain areas on campus, she continually ran into him, which caused her to suffer flashbacks, panic attacks and other symptoms of emotional distress that caused her to run and hide in the bathroom.  CMS also assigned Ms. Roe to the same lunch period as M.G. during the second semester of their junior year (Spring 2016) and the second semester of their senior year (Spring 2017).  As result, Ms. Roe would routinely leave the cafeteria to avoid proximity to him, and she eventually started skipping lunch or eating in classrooms, thus furthering her social isolation.

53.     At no point during her time as a student at MPHS did CMS or its officials ever provide Ms. Doe information about her rights and options under Title IX to obtain safety or academic accommodations to remedy the hostile educational environment on campus.

54.     Ms. Roe also avoided MPHS administrators involved in her reports, such as Counselor Folk, Defendant Bosco and Defendant Leak.  On several occasions, Defendant Bosco would personally address Ms. Roe in public at various events, such as academic award ceremonies, graduation rehearsal and theatre plays, which often led other student to inquire how the Principal at such a large school seemed to know her.  This would emotionally trigger Ms. Roe.

55.     Early during the fall 2015 semester, Defendant Bosco held a student assembly about known issues occurring in the woods.  During this assembly, Defendant Bosco informed student that "some people go into the woods and don't come back happy," which offended Ms. Roe given the seriousness of M.G.'s rape, which she had endured and reported to Defendant Bosco.  He then warned female students that CMS and its officials could not protect them if they went into the

woods, which caused Ms. Roe to feel responsible for the rape and to experience a severe depressive state after this student assembly. Defendant Bosco also claimed during the assembly that male student would be treated as "guilty until proven innocent" and that it is "just the price we pay for being men." This caused Ms. Roe to feel invalidated and disbelieved, as M.G. had not been held responsible.

56. After this assembly, MPHS students started joking about Defendant Bosco's remarks that female students should "stay out of the woods." This resulted in students sharing related internet memes and repeating jokes to perpetuate the hostile educational environment on campus. Given the pervasive culture of disregard for female students sexually victimized in the woods adjacent to MPHS, Ms. Roe felt pressured to participate in the jokes in order to avoid being identified as a victim. This caused her psychological distress and she became further socially isolated by seeking to avoid these conversations and situations with MPHS students.

57. During the 2015-2016 school year, another sexual assault reportedly occurred in the woods adjected to MPHS and it made headlines given the lack of any notice to parents about the risk of sexual violence occurring in the woods.[5]

58. Sometime between her junior and senior year, a parent of another student contacted Ms. Roe about M.G. having committed some form of sexual misconduct against her minor daughter, G.C. Knowing that M.G. had continued to hurt other female students at MPHS after Ms. Roe had reported him to CMS left her even further emotionally distressed.

59. Throughout high school and into college, Ms. Roe has struggled with depression, anxiety, flashbacks, panic attacks, nausea, suicidal ideation, self-harm, insomnia, nightmares,

---

[5] *See Sexual Assault Reported Near Myers Park HS,* WCNC (May 5, 2016), *available at* https://www.wcnc.com/article/news/local/sexual-assault-reported-near-myers-park-hs/171539436.

hypervigilance, concentration, and other symptoms of her diagnosed chronic Post-Traumatic Stress Disorder ("PTSD") with agoraphobia, generalized anxiety disorder, panic disorder, and major depressive disorder.

60.     Despite her suffering, Ms. Roe felt unable to seek counseling, therapy or other forms of treatment while a MPHS student to avoid her parents learning about the full extent of M.G.'s sexual abuse.  Furthermore, Ms. Roe felt unable to access the counseling office at MPHS given that Counselor Folk had not properly handled her report.  The lack of mental health treatment exacerbated Ms. Roe's emotional distress and related symptoms.

61.     As a result of severe, ongoing emotional distress and PTSD, Ms. Roe has withdrawn twice from her "dream" college, once during both her freshman year (Spring 2018) and the other during her sophomore year (Fall 2018), which left her a full academic year behind in her undergraduate studies.

62.     In January 2019, Ms. Roe entered into a residential treatment facility to receive in-patient care for her PTSD, depression and suicidal ideation.  This occurred at great personal expense.  In March 2019, she received partial hospitalization through the same program for another month.  This necessary medical care and treatment prevented her from returning to college during the Spring 2019 semester, so she took a medical leave through the Spring and Fall 2019 semester, which has left her two academic years behind in her undergraduate studies.

63.     Given her need to continue accessing necessary medical treatment and care, Ms. Roe is transferring out of her "dream" college to another school closer to home for the Spring 2020 semester to better access ongoing support from her family.

# CLAIMS FOR RELIEF

## COUNT I
### (*Deliberate Indifference and Intentional Discrimination under Title IX, 20 U.S.C. §§ 1681, et seq.*, Against Defendant CMS)

64.     Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

65.     From the fall of 2013 to the spring of 2018, Ms. Roe was a minor student enrolled at MPHS seeking access to educational opportunities and benefits provided by Defendant CMS.

66.     MPHS is a public educational institution under the control and supervision of Defendant CMS, which is a recipient of federal funding from the U.S. Department of Education subject to the requirements of Title IX.

67.     M.G.'s ongoing dating violence against Ms. Roe, which included repeatedly extorting explicit images from her under threat of physical harm as well as sexual violence, constituted severe, pervasive and objectively offensive sexual harassment.

68.     Upon information and belief, after receiving Ms. Roe's report that M.G. had committed ongoing dating violence and sexual harassment against her, as well as recently raped her in the woods adjacent to MPHS, on or about October 23, 2014, Ms. Weinstein reported the same to appropriate officials at Defendant CMS.  In December 2014, Ms. Roe again reported M.G.'s sexual harassment and abuse to Counselor Folk, Defendant Leak and Defendant Bosco.

69.     Defendant CMS exercised substantial control over M.G., a male student enrolled at MPHS from the fall of 2013 until the spring of 2018.

70.     Defendant CMS exercised substantial control over the context of the sexual harassment, which often occurred during school hours at MPHS when M.G. would send Ms. Roe threatening text messages.  Defendant CMS also exercised substantial control over the context of

17

the rape, which occurred in the woods adjacent to MPHS and is monitored frequently by CMS officials, such as Defendants Bosco and Leak.

71. M.G.'s on and off campus sexual harassment and abuse of Ms. Roe created a sexually hostile educational environment for her on campus, which impeded her equal access to education.

72. Defendant CMS perpetuated this sexually hostile educational environment at MPHS through its deliberate indifference towards Ms. Roe's reports of M.G.'s ongoing dating violence, sexual harassment and sexual abuse. Specifically, Defendant CMS, by and through its agents and employees, acted with deliberate indifference by:

   a.   discouraging Ms. Roe from filing a formal complaint against M.G. by threatening retaliation against her academic standing if he were not found responsible;

   b.   failing to report to Ms. Roe's mother that M.G. had threatened to use a gun while at MPHS in order to coerce Ms. Roe into the woods adjacent to campus and then rape Ms. Roe;

   c.   failing to properly investigate M.G. or otherwise take corrective action or safety measures against him in order to protect Ms. Roe and remedy the hostile educational environment at MPHS;

   d.   failing to offer information to Ms. Roe about her rights and options under Title IX, which included remedial actions meant to ensure her ongoing access to education free from a sexually hostile environment;

   e.   demonstrating a victim-blaming attitude towards female students sexually abused by male students in the woods adjacent to campus during a student assembly in fall of 2015, which resulted in fellow students joking about and thus perpetuating the hostile educational environment at MPHS;

   f.   failing to promulgate and adopt policies and procedures aimed at reasonably, appropriately and effectively addressing the known risks of sexual misconduct against minor female students occurring in the woods adjacent to campus; and

g.      failing to designate a Title IX Coordinator to receive student complaints of sexual misconduct or otherwise ensure compliance with Title IX, including investigation and resolution of such complaints.

73.     As a direct and natural consequence of Defendant CMS's actions, inactions and overall deliberate indifference to, and violation of, Ms. Roe's clearly established rights under Title IX, Ms. Roe suffered and continued to suffer injuries, including, without limitations, emotional distress, psychological trauma and mortification to require ongoing treatment and care.

74.     As a direct and proximate result of Defendant CMS's deliberate indifference and intentional discrimination, by and through its agents and employees, Ms. Roe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.      Past, present, and future physical and psychological pain, suffering, and impairment;

b.      Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

c.      Loss of educational access and opportunity;

d.      Past, present, and future economic losses, including lost wages;

e.      Attorneys' fees and costs; and

f.      Such other and further relief that this Court deems just and proper.

## COUNT II

**(*Violation of the Fourteenth Amendment of the U.S. Constitution Pursuant to 42 U.S.C. § 1983, Against Defendants CMS, Leak and Bosco*)**

75.     Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs as if fully set forth herein.

76.     Defendant CMS is a local governing body with final policymaking authority over MPHS.  *See* N.C. Gen. Stat. §§ 115C-36, 115C-40.  At all times relevant to this Complaint, CMS acted under color of state law.

77.     Defendant Leak, at all relevant times, was an employee of CMPD and the City, as well as an agent of CMS, acting under the color of state law while serving as an SSRO at MPHS.  As SSRO, his decisions effectively manifested final policymaking authority over campus safety decisions at MPHS.  He is sued in his official and individual capacity.

78.     Defendant Bosco, at all relevant times, was an employee of CMS acting under the color of state law while serving as Principal in his official capacity.  As Principal, his decisions effectively manifested final policymaking authority over disciplinary decisions at MPHS.  He is sued in his individual capacity.

79.     Both the Equal Protection Clause and Title IX provide students like Ms. Roe protection against sex discrimination, including in the form of sexual harassment and violence.

80.     Title IX is a federal civil rights statute intended to benefit female students, like Ms. Roe.  Title IX has historically ensured their equal access to education.  Title IX provides students like Ms. Roe clear civil rights, which are not amorphous or vague, to be free from sexually hostile educational environments created by known sex-based discrimination, such as peer-perpetrated sexual harassment or violence when educational institutions, like Defendant CMS, have actual notice.  Defendant CMS is obligated as a federal funding recipient to comply with Title IX.

81.     Through the U.S. Department of Education's Office for Civil Rights ("OCR"), Defendant CMS receives regular information about the mandates of Title IX requiring it to prevent and address peer-perpetrated sexual misconduct, which include the requirement that Defendant CMS have an appointed Title IX Coordinator whose contact information is provided to parents

and students in order to facilitate their complaints of sex discrimination, and train its employees, agents, students, and parents about their rights and/or obligations under Title IX.

82.     Defendant CMS had an official policy, practice and/or custom of deliberate indifference towards peer-perpetrated sexual harassment and abuse by failing to address such complaints, as required by Title IX.  *See* 34 C.F.R. § 106.8(b).  Through affirmative decisions to discourage reporting of peer-perpetrated sexual misconduct, as well as the intentional failure to investigate and otherwise respond to such complaints upon actual notice, Defendants CMS, Leak and Bosco manifested deliberate indifference towards female students' rights to access education free from a sexually hostile environment under both Title IX and the Equal Protection Clause.

83.     This official policy, practice and/or custom of deliberate indifference towards peer-perpetrated sexual harassment and abuse by, which is in violation of Title IX and the Fourteenth Amendment of the U.S. Constitution, was manifested by Defendant CMS:

a.     failing to report to Ms. Roe's mother that M.G. had threatened to use a gun while at MPHS in order to coerce Ms. Roe into the woods adjacent to campus and then rape Ms. Roe;

b.     failing to properly investigate M.G. or otherwise take corrective action or safety measures against him in order to protect Ms. Roe and remedy the hostile educational environment at MPHS;

c.     failing to offer information to Ms. Roe about her rights and options under Title IX, which included remedial actions meant to ensure her ongoing access to education free from a sexually hostile environment;

d.     demonstrating a victim-blaming attitude towards female students sexually abused by male students in the woods adjacent to campus during a student assembly in fall of 2015, which resulted in fellow students joking about and thus perpetuating the hostile educational environment at MPHS;

e.     failing to promulgate and adopt policies and procedures aimed at reasonably, appropriately and effectively addressing the known risks of sexual misconduct against minor female students occurring in the woods adjacent to campus; and

f.   failing to designate a Title IX Coordinator to receive student complaints of sexual misconduct or otherwise ensure compliance with Title IX, including investigation and resolution of such complaints.

84.   By and through their individual and collective failure to investigate or otherwise address reports of peer-perpetrated sexual misconduct, including Ms. Roe's complaint against M.G., Defendants Leak and Bosco acted in bad faith upon the official policy, practice and/or custom of institutional discrimination and deliberate indifference towards the sexual abuse of minor female students at MPHS by:

a.   discouraging Ms. Roe from filing a criminal complaint with CMPD against M.G. who had threatened to use a gun while at MPHS in order to coerce Ms. Roe into the woods adjacent to campus and then rape Ms. Roe;

b.   discouraging Ms. Roe from pursuing her rights and options of proceeding against M.G. under the Student Code of Conduct issued by CMS by threatening retaliation against her academic standing if he were not found responsible;

c.   failing to report to Ms. Roe's mother that M.G. had threatened to use a gun while at MPHS in order to coerce Ms. Roe into the woods adjacent to campus and then rape Ms. Roe; and

d.   failing to inform Ms. Roe or her mother about their rights and options under Title IX, which included remedial actions meant to ensure her ongoing access to education free from a sexually hostile environment.

85.   In failing to address her complaint against M.G., and failing to notify Ms. Roe's mother that her minor daughter had been sexually attack in the woods adjacent to MPHS, Defendants Leak and Bosco acted in bad faith to deprive Ms. Roe of her constitutional right to equal protection under the Fourteenth Amendment of the U.S. Constitution and her federal rights of equal access to education under Title IX.

86.   As a direct and natural consequence of the actions, inactions and overall deliberate indifference to and violation of Ms. Roe's clearly established constitutional and federal rights by and through the official policies, practices and/or customs of Defendant CMS, which were acted

upon and furthered by the bad faith acts and omissions by Defendants Leak and Bosco, Ms. Roe suffered and continues to suffer injuries, including, without limitations, emotional distress, psychological trauma, and mortification to require ongoing treatment and care.

87.     As a direct and proximate result of the deliberate indifference and intentional discrimination by Defendants CMS, Leak, and Bosco, Ms. Roe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering, and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

    c.    Loss of educational access and opportunity;

    d.    Past, present, and future economic losses, including lost wages;

    e.    Attorneys' fees and costs; and

    f.    Such other and further relief that this Court deems just and proper.

**COUNT III**
**(*Failure to Train in Violation of Title IX and the Fourteenth Amendment of the U.S. Constitution Pursuant to 42 U.S.C. § 1983, Against Defendants CMS, City and Putney*)**

88.     Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs as if fully set forth herein.

89.     Defendant CMS is a local governing body with final policymaking authority over MPHS.  *See* N.C. Gen. Stat. §§ 115C–36, 115C–40.  At all times relevant to this Complaint, CMS acted under color of state law.

90.     Defendant City is a local governing body with final policymaking authority over CMPD.  *See* N.C. Gen. Stat. § 160A-281.  At all times relevant to this Complaint, the City acted under color of state law.

91.     Defendant Putney, in his official capacity as the Chief of Police for CMPD, is a person who has final policymaking authority regarding the development of and training for the SSRO program.  *See* N.C. Gen. Stat. § 160A-288.4.  At all times relevant to this Complaint, Defendant Putney acted under color of state law and he is sued in his official capacity only.

92.     Upon information and belief, at all relevant times, Defendant CMS engaged in policymaking to supervise and control all policies, practices, customs, and regulations regarding MPHS, its students, employees, staff and agents.  These policies included reporting and responding to criminal or otherwise unlawful sexual misconduct complaints, as well as ensuring compliance with related constitutionally and federally protected rights, such as those found under the Equal Protection Clause and Title IX.

93.     Upon information and belief, at all relevant times, Defendant CMS had a duty to train its employees and agents, such as Ms. Weinstein, Counselor Folk, Defendants Leak, and Bosco, on how to prevent and respond to sexual offenses and otherwise unlawful sexual misconduct, including sexual harassment, dating violence and stalking, as well as comply with related constitutionally and federally protected rights, such as those found under the Equal Protection Clause and Title IX.

94.     Upon information and belief, at all relevant times, Defendants City and Putney engaged in policymaking to supervise and control all policies, practices, customs, and regulations regarding CMPD and its police officers, as well as the conduct and performance of SSROs assigned to CMS.  These policies included reporting and responding to sexual offenses, as well as ensuring compliance with related constitutional rights, such as those found under the Equal Protection Clause.

95.     Upon information and belief, at all relevant times, Defendants City and Putney had a duty to train CMPD officers, such Defendant Leak, on how to prevent and respond to sexual offenses, dating violence and stalking, as well as comply with related constitutional rights, such as those found under the Equal Protection Clause.

96.     Upon information and belief, at all relevant times, Defendants CMS, City and Putney had a duty to select, train and monitor SSROs, such as Defendants Leak, to ensure they worked to prevent and address sexual offenses and otherwise unlawful sexual misconduct, as well as comply with related constitutionally and federally protected rights, such as those found under the Equal Protection Clause and Title IX.

97.     Numerous authorities, including the U.S. Supreme Court and OCR, have made clear that schools, by and through their employees and agents, must address peer-perpetrated sexual harassment and violence, which occurs with regularity given the high predictability, recurrence and prevalence of sexual misconduct in educational settings.  Furthermore, Defendants CMS, City and Putney had specific reason to know of the high predictability, recurrence and prevalence of sexual misconduct perpetrated by male students against female students in the woods adjacent to MPHS.  Therefore, it was inevitable that Defendants CMS, City and Putney, by assigning SSROs to provide security to students, would encounter recurrent situations involving sexual misconduct to implicate students' constitutional and federal rights, as did occur at MPHS.

98.     Through its failure to train employees and agents assigned to MPHS, including Ms. Weinstein, Counselor Folk, Defendant Leak, and Defendant Bosco, Defendant CMS had a policy, practice and/or custom of deliberate indifference to the rights of students whom these officials and agents would come in contact with during the course of their respective duties at MPHS.  The lack of training left officials and agents at MPHS unequipped to ensure lawful responses to complaints

of peer-perpetrated sexual misconduct despite the clearly established and well-known dangers of sexual misconduct in public schools, and the particular risk of sexual abuse occurring in the woods adjacent to MPHS. Thus, Defendant CMS, by and through its failure to train its agents and employees, subjected Ms. Roe to the deprivation of her constitutional rights under the Equal Protection Clause and her federal civil rights under Title IX.

99. Through its failure to train police officers within CMPD, including those assigned to CMS as SSROs, such as Defendant Leak, Defendants City and Putney had a policy, practice and/or custom of deliberate indifference to the rights of students that Defendant Leak would come in contact with during the course of his duties as SSRO. The lack of training for SSROs left Defendant Leak unequipped to ensure lawful responses to complaints of peer-perpetrated sexual offenses or other forms of unlawful sexual misconduct despite the clearly established and well-known dangers of sexual misconduct in public schools, and the particular risk of sexual abuse occurring in the woods adjacent to MPHS. Thus, Defendants City and Putney, by and through their failure to train Defendant Leak, subjected Ms. Roe to the deprivation of her constitutional rights under the Equal Protection Clause and her federal civil rights under Title IX.

100. As a direct and natural consequence of the actions, inactions and overall deliberate indifference to and violation of Ms. Roe's clearly established constitutional and federal rights by Defendants CMS, City and Putney, Ms. Roe suffered and continues to suffer injuries, including, without limitations, emotional distress, psychological trauma, and mortification to require ongoing treatment and care.

101. As a direct and proximate result of the deliberate indifference resulting from Defendants CMS, City and Putney's failure to train their agents and employees, Ms. Roe sustained

and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

     a.     Past, present, and future physical and psychological pain, suffering, and impairment;

     b.     Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

     c.     Loss of educational access and opportunity;

     d.     Past, present, and future economic losses, including lost wages;

     e.     Attorneys' fees and costs; and

     f.     Such other and further relief that this Court deems just and proper.

## COUNT IV

### (*Negligence against Defendants Leak and Bosco*)

102.    Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs as if fully set forth herein.

103.    Defendants Bosco and Leak owed, assumed and undertook common law duties of care to and/or contractual duties of care to act reasonably and with ordinary prudence to protect and safeguard Ms. Roe from reasonably foreseeable dangerous acts of fellow students, including sexual harassment and abuse, and to provide a "safe school environment" for Ms. Roe at MPHS, including, *inter alia*, pursuant to N.C. Gen. Stat. §§ 115C-1, 115C-47(61).

104.    Defendants Leak and Bosco breached their respective duties of care owed to Ms. Roe, and acted unreasonably and in bad faith when they willfully and deliberately decided not to respond to Ms. Roe's report of sexual harassment and rape by fellow student M.G. or to disclose the rape of their minor daughter to Ms. Roe's parents.

105. Upon information and belief, Defendants Leak and Bosco knew about the dangerous conditions on MPHS's campus, which consisted of pervasive peer-perpetrated sexual harassment and abuse by male students against female students in the woods adjacent to MPHS, including by M.G. against Ms. Roe, yet failed to prevent such foreseeable harm to Ms. Roe of ongoing sexual harassment.

106. A principle of ordinary prudence would have reasonably foreseen that Ms. Roe would be left vulnerable to ongoing sexual harassment by M.G. as well as suffer from a sexually hostile educational environment on campus.

107. An SSRO of ordinary prudence would have reasonably foreseen that Ms. Roe would be left vulnerable to ongoing sexual harassment by M.G. as well as suffer from a sexually hostile educational environment on campus.

108. As a direct and natural consequence of the willful, deliberate, conscious and bad faith decisions by Defendants Leak and Bosco not to respond Ms. Roe's report of sexual harassment and rape to prevent and address ongoing sexual harassment and threats, or to disclose the reported rape of their minor daughter to Ms. Roe's parents, Ms. Roe suffered and continues to suffer injuries, including, without limitations, emotional distress, psychological trauma, and mortification to require ongoing treatment and care.

109. As a direct and proximate result of the breaches of the duty of care both Defendants Leak and Bosco owed to Ms. Roe, she sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering, and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

c.      Loss of educational access and opportunity;

d.      Past, present, and future economic losses, including lost wages;

e.      Attorneys' fees and costs; and

f.      Such other and further relief that this Court deems just and proper.

## COUNT V

### (*Negligent Infliction of Emotional Distress against Defendants Leak and Bosco*)

110.    Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs as if fully set forth herein.

111.    Defendants Leak and Bosco acted negligently, recklessly and in bad faith when they failed to immediately respond to reports that M.G. was sexually harassing Ms. Roe and had raped her in the woods adjacent to MPHS as part of a pattern of ongoing dating violence.

112.    Defendants Leak mislead Ms. Roe about her rights and options under state law by falsely claiming that M.G.'s threat to use a gun while at MPHS was not the "reasonable duress" necessary to constitute a criminal offense. Defendant Leak made these statements to a traumatized 15-year-old student stuck in a pattern of dating violence and sexual abuse without notifying her parents of the reported rape, and thus deprived her of advice and counsel from a competent adult. Defendant Leak also made these statements without taking a formal statement from Ms. Roe or otherwise initiating a formal investigation into the sexual misconduct.

113.    Defendant Bosco threatened retaliation against Ms. Roe if she formally reported M.G.'s sexual harassment and violence by suggesting CMS could take disciplinary action against her if M.G. was not found responsible for sexual misconduct. Defendant Bosco made these statements to a traumatized 15-year-old student stuck in a pattern of dating violence and sexual abuse without notifying her parents of the reported rape to deprive her of advice and counsel from

a competent adult. Defendant Bosco also made these statements without taking a formal statement from Ms. Roe, initiating a formal investigation into the sexual misconduct, or otherwise reporting the sexual harassment and abuse of a minor female student to the appropriate authorities.

114.    This conduct by Defendants Leak and Bosco is so outrageous and beyond the conduct expected in normal society for school officials, such as Principals and SSROs, who are expected to help minor students who are victimized and protect them by notifying their parents of reported crimes committed against them rather than discourage them from exercising their legal rights and options. Such actions were taken with deliberate indifference and reckless disregard to the resulting infliction of emotional distress upon Ms. Roe.

115.    As a result of the negligent actions and inactions of Defendants Leak and Bosco, made with reckless disregard for the resulting harm to Ms. Roe, she suffered needless emotional distress and an ongoing hostile educational environment at MPHS including the loss of her equal opportunity to access free public education.

116.    As a direct and natural consequence of their reckless and negligent actions, inactions and overall deliberate indifference, both Defendants Leak and Bosco inflicted emotional distress upon Ms. Roe, which she suffered and continues to suffer injuries, including, without limitations, emotional distress, psychological trauma, and mortification to require ongoing treatment and care.

117.    As a direct and proximate result of reckless and negligent actions, inactions and overall deliberate indifference of both Defendants Leak and Bosco, Ms. Roe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

      a.      Past, present, and future physical and psychological pain, suffering, and impairment;

b.      Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

c.      Loss of educational access and opportunity;

d.      Past, present, and future economic losses, including lost wages;

e.      Attorneys' fees and costs; and

f.      Such other and further relief that this Court deems just and proper.


## COUNT VI

*(Negligent Training, Retention, and Supervision against Defendants CMS, City and Putney)*

118.    Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

119.    Defendant City, at all times relevant, employed Defendant Leak as a police officer for CMPD, which was a prerequisite for his eligibility as an SSRO.

120.    Defendant Putney, at all times relevant, assigned Defendant Leak as an SSRO to MPHS.

121.    Defendant CMS, at all times relevant, agreed to Defendant Leak serving as an SSRO to MPHS.

122.    At all times relevant to this Complaint, as SSRO at MPHS, Defendant Leak acted under color of state law, both as an agent of CMS and as an employee of CMPD and thus the City.

123.    Defendants Leak negligently, recklessly and in bad faith failed to immediately and reasonably respond to reports that Ms. Roe had been raped in the woods adjacent to MPHS after school by M.G. who claimed to have a gun at MHPS and threatened to use it if Ms. Roe did not comply with his demands or if she sought help.

124.     Defendant Leak mislead Ms. Roe about her rights and options under federal and state law by falsely claiming that M.G.'s threat to use a gun while at MPHS was not "reasonable duress" to constitute a criminal offense or unlawful sexual misconduct and also deprived her of advice and counsel from a competent adult by failing to report the rape to Ms. Roe's parents.

125.      These actions and inactions, taken while assigned as SSRO to monitor minor students at MPHS, reveal that Defendant Leak was incompetent and inherently unfit for the position.   In addition, or in the alternative, his deliberate indifference in light of the known circumstances, taken with conscious and reckless disregard as well as negligence, create a reasonable inference that he was incompetent.

126.     An ordinary, cautious and reasonably prudent employer, acting in the position of Defendants CMS, City and Putney, would have prevented this misconduct by Defendant Leak upon actual or constructive notice of his incompetence and inherent unfitness, especially knowing that an SSRO is assigned to ensure the security and welfare of predominantly minor students.

127.     As a direct and natural consequence of the negligent retention and supervision of Defendant Leak by Defendants City and Putney, Ms. Roe suffered, and continues to suffer injuries, including, without limitations, emotional distress, psychological trauma, and mortification to require ongoing treatment and care.

128.     As a direct and proximate result of the negligent retention and supervision of Defendant Leak, by Defendants CMS, City and Putney, Ms. Roe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.     Past, present, and future physical and psychological pain, suffering, and impairment;

    b.     Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

c.      Loss of educational access and opportunity;

d.      Past, present, and future economic losses, including lost wages;

e.      Attorneys' fees and costs; and

f.      Such other and further relief that this Court deems just and proper.

## COUNT VII
### (*Common Law Obstruction of Justice Against Defendants Leak and Bosco*)

129.   Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

130.   Defendant Leak acted to prevent, impede and hinder any investigation of Ms. Doe's rape, whether criminally, through CMS's disciplinary process or under Title IX, through his willful, bad faith action of failing to take a formal report from Ms. Roe of the rape reportedly committed by M.G. in the woods adjacent to campus.  Instead, Defendant Leak mislead a 15-year-old Ms. Roe, whose parents were not present or alerted to the reported rape, into believing that M.G.'s threat to use a gun while at MPHS in order to gain her compliance was not the type of "reasonable duress" required for a criminal charge of rape.

131.   Defendant Bosco acted to prevent, impede and hinder any investigation of Ms. Doe's rape, whether criminally, through CMS's disciplinary process, or under Title IX, through his willful, bad faith action of failing to take a formal report from Ms. Roe of the rape reportedly committed by M.G. in the woods adjacent to campus.  Instead, Defendant Bosco threatened retaliation against the 15-year-old Ms. Roe, whose parents were not present or alerted to the reported rape, into believing CMS could find her responsible for misconduct and suspend her from MPHS if she reported M.G. and he was not found responsible.

132.     As a direct and natural consequence of Defendants Leak and Bosco's actions, a 15-year-old Ms. Roe felt unable to pursue legal justice, accountability and redress for M.G.'s rape, which has resulted in substantial harm and injuries that she continues to suffer from to this day, including, without limitations, emotional distress, psychological trauma, and mortification.

133.     As a direct and proximate result of Defendant Leak and Bosco's obstruction, Ms. Roe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.     Past, present, and future physical and psychological pain, suffering, and impairment;

b.     Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

c.     Loss of educational access and opportunity;

d.     Past, present, and future economic losses, including lost wages;

e.     Attorneys' fees and costs; and

f.     Such other and further relief that this Court deems just and proper.

## **REQUEST FOR RELIEF**

WHEREFORE Plaintiff respectfully requests that this Court grant her a jury trial seeking: (a) compensatory and punitive damages in an amount which exceeds $75,000.00, to be proven at trial; (b) reasonable attorneys' fees, costs, and expenses; and (c) all other and further relief that justice may require.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury.


Date:   December 20, 2019                    Respectfully,

**/s/ *Geraldine Sumter***
Geraldine Sumter, Esq. (N.C. Bar No. 11107)
**FERGUSON CHAMBERS & SUMTER, P.A.**
309 East Morehead Street, Suite 110
Charlotte, NC 28202
Telephone:     (704) 375-8461
Facsimile:     (980) 938-4867
GSumter@fergusonsumter.com

Laura L. Dunn, Esq. (*pro hac vice* pending)
**L.L. DUNN LAW FIRM, PLLC**
1629 K Street NW, Suite 300
Washington, DC  20006-1631
Telephone:     (202) 204-9001
Facsimile:     (202) 204-9002
LDunn@lauraldunnesq.com

*Attorneys for Plaintiff*